## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Curtis C. Nelson,

        Debtor.

Case No.:11-43113

Chapter 11 Case

---

### NOTICE OF HEARING AND MOTION FOR: (I) EXPEDITED RELIEF; AND (II) APPROVAL OF SALE FREE AND CLEAR OF LIENS AND INTERESTS

---

1.      Curtis C. Nelson (the "Debtor") moves the Court for the relief requested below and gives notice of hearing.

2.      The Court will hold a hearing on the Debtor's motion at 9:30 a.m. on September 14, 2011 in Courtroom 8 West of the United States Bankruptcy Court, 300 South Fourth Street, Minneapolis, Minnesota.

3.      As the Debtor is seeking expedited relief, he will not object to the timeliness of any objection that is filed before the hearing on the motion. UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. The petition commencing this Chapter 11 case was filed on May 3, 2011. The case is now pending in this Court.

5.      This Motion arises under 11 U.S.C. §§363 and 506, Bankruptcy Rules 2002, 3012, 6004 and Local Rules 9006-1 and 9013-1. The Debtor requests that the court enter and order approving the sale of real property free and clear of liens and interests.

121285909v1  0906146  72096

## REAL PROPERTY AND PURCHASE OFFER

6.      The Debtor and his former spouse are co-owners of two single family houses with addresses of 1553 Linner Road, Wayzata, Minnesota (the "1553 House") and 1555 Linner Road, Wayzata, Minnesota (the "1555 House").

7.      Marjorie Nelson lived in the 1553 House until mid-June 2011. The 1553 House has been vacant since she moved, and neither the Debtor nor Marjorie Nelson claim the 1553 House as a homestead.

8.      On or about July 21, 2011, the Debtor and Marjorie Nelson agreed to listing agreements under which Edina Realty, Inc. agreed to act as broker for the sale of the 1553 House and the 1555 House.

9.      By application dated July 26, 2011, the Debtor sought approval of the employment of Edina Realty, Inc. An order approving the employment was entered on July 27, 2011.

10.     Under a Purchase Agreement dated July 27, 2011 (as amended, the "Purchase Agreement"), the Debtor and Marjorie Nelson agreed to sell the 1553 House to an individual named YuJin Han for the sum of $512,000.00. Based on the results of an inspection, and an amendment dated August 5, 2011, the purchaser reduced the amount of the proposed purchase price to $480,000.00. A copy of the Purchase Agreement, with amendments and other attachments, is attached hereto as Exhibit A.

11.     After payment of a brokerage commission in the amount of $30,000.00, real estate taxes through the closing date in the amount of $5,445.32, and other costs of closing, the Debtor expects that remaining sale proceeds will be approximately $440,000.00.

121285909v1  0906146  72096

# LIENS/INTERESTS IN PROPERTY

## A. INTERESTS OF FORMER SPOUSE

12. On April 15, 2009, the Minnesota State District Court for the Fourth Judicial District, Hennepin County (the "State Court"), entered its Findings of Fact, Conclusions of Law and Order for Judgment and Judgment and Decree (the "Original Decree") in the dissolution proceeding involving the Debtor and Marjorie Nelson. The Original Decree was filed with the Office of the Hennepin County Recorder on April 17, 2009 as Document Number 9346462, and provides, in part that:

> …[Marjorie Nelson] is awarded a cash property settlement in the amount of $831,657 payable by [the Debtor] to [Marjorie Nelson], pursuant to the following terms: commencing May 1, 2009, [the Debtor] shall pay to [Marjorie Nelson] said property settlement, including 5% interest through monthly payments amortized over 15 years in the amount of $6,549.40 until satisfied in full. [The Debtor] shall execute a mortgage note and mortgage deed to secure [Marjorie Nelson's] property settlement against the parties' homestead, located at 1553 and 1555 Linner Road, Wayzata, Minnesota...

Original Decree at p. 80, 12(G).

13. The Original Decree further awarded Marjorie Nelson:

> …a life estate in and to the [1553 House], specifically the lifetime right of use and possession of said residence, subject to [the Debtor's] obligation to pay all of the mortgage principal and interest, real estate taxes and insurance as the fee title owner and remainder beneficiary to said property. The underlying mortgages payable to J.P. Morgan and Wells Fargo that are encumbrances against both residences at 1553 and 1555 Linner Road shall be the sole obligation of [the Debtor] to service the encumbrances against both residences.

Id. at p. 80, 12(H).

14. Under the Amended Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree filed in the Dissolution Proceeding entered by the State Court on November 22, 2010 (the "Amended Decree"), the Debtor's obligation on account of the property settlement was increased to $1,282,228.00, to be secured by a mortgage interest in the 1553 House and 1555 House.

121285909v1  0906146  72096

15.     The Amended Decree vacated the award of a life estate in the 1553 House and, instead, awarded the Debtor and Marjorie Nelson each a "50% undivided interest as tenants in common to both homes."

**B.      LENDERS' SECURED CLAIMS**

16.     The Debtor and Marjorie Nelson are indebted to JPMorgan Chase Bank ("JPMorgan") under a promissory note dated September 18, 2003 in the original principal amount of $3,400,000.00 (the "JPMorgan Note").  According to a motion for relief from the automatic stay filed by JPMorgan, the total balance due under the JPMorgan Note, excluding charges and fees, of May 1, 2011 was $3,046,381.09.

17.     The JPMorgan Note is secured by a Mortgage dated September 18, 2003 (the "JPMorgan Mortgage"), under which the Debtor and Marjorie Nelson granted JPMorgan a mortgage interest in the 1553 House and the adjoining property, which has a street address of 1555 Linner Road (the "1555 House").  The JPMorgan Mortgage was recorded in the office of the Hennepin County Recorder on December 18, 2003 as Document Number 8254232.

18.     The Debtor and Marjorie Nelson are indebted to Wells Fargo Bank, N.A. ("Wells Fargo") under a Home Equity Access Line of Credit Agreement dated April 22, 2003 (the "2003 HELOC") under which Wells Fargo agreed to loan, on a revolving basis, an amount not to exceed $158,800.00.  According to a proof of claim filed by Wells Fargo on June 16, 2011, the balance owing under the 2003 HELOC as of the Filing Date was $162,101.34.

19.     The 2003 HELOC is secured under a Mortgage dated April 22, 2003 (the "2003 Wells Mortgage"), under which the Debtor and Marjorie Nelson granted Wells Fargo a mortgage interest in the 1553 House.  The 2003 Wells Mortgage was recorded with the Office of the Hennepin County Recorder on June 6, 2003 as Document Number 8064869.

121285909v1  0906146  72096

20.     The Debtor and Marjorie Nelson are indebted to Wells Fargo under a Home Equity Access Line of Credit Agreement dated October 30, 2002 (the "2002 HELOC") under which Wells Fargo agreed to loan, on a revolving basis, an amount not to exceed $380,000.00. According to a proof of claim filed by Wells Fargo on June 16, 2011, the balance owing under the 2002 HELOC as of the Filing Date was $ 385,894.32.

21.     The 2002 HELOC is secured under the terms of a Mortgage dated October 30, 2002 (the "2002 Wells Mortgage"), under which the Debtor and Marjorie Nelson granted Wells Fargo a mortgage interest in the 1555 House.   The 2002 Wells Mortgage was recorded with the Office of the Hennepin County Recorder on February 28, 2003 as Document Number 7961318.[1]

22.     Pursuant to a Subordination Agreement (Indebtedness and Liens) (the "Subordination Agreement") dated September 16, 2003, Wells Fargo subordinated its rights arising under the 2002 HELOC, 2003 HELOC, the 2002 Wells Mortgage, and the 2003 Wells Mortgage to JPMorgan's rights and interests under the JPMorgan Note and JPMorgan Mortgage. The Subordination Agreement was recorded with the Office of the Hennepin County Recorder on December 18, 2003 as Document Number 8254233.

23.     In material part, the Subordination Agreement provides that, in the event of bankruptcy or similar proceedings involving the Debtor, Wells Fargo:

> …will hold in trust for [JPMorgan] and pay over to [JPMorgan], in the form received (together with any necessary endorsement), to be applied on the [JPMorgan Note], any and all monies, dividends or other assets received in any such proceedings on account of the [2002 HELOC and 2003 HELOC] unless and until the [JPMorgan Note] shall be paid in full…

---

[1] According to a proof of claim filed by Wells Fargo on June 16, 2011, the 2002 Wells Mortgage encumbers both the 1553 House and the 1555 House.  The error is likely the result of the mortgage's reference to "1617 Linner Road," in addition to 1555.  The property associated with the 1617 address was acquired in early 2003 and is now included in the parcel with the address at 1555.

121285909v1  0906146  72096

24.     With the exception liens for unpaid real estate taxes, the mortgage interest granted to JPMorgan is a first priority interest in both the 1553 House and the 1555 House.

## C.     JUDGMENTS

25.     Jordan Family, LLC is the holder of a judgment in the amount of $337,647.48, which was entered by the Minnesota State District Court for the Fourth Judicial District on April 21, 2011 in the civil action captioned *Jordan Family, LLC v. Curtis C Nelson*, Case No. 27-CV-10-20961, and docketed in Hennepin County on May 4, 2011.

26.     Crown Bank is the holder of a judgment in the amount of $3,800,000.00, which was entered by the Minnesota State District Court for the Fourth Judicial District on February 3, 2011 in the civil action captioned *Crown Bank v. Curtis C Nelson*, Case No. 27-CV-10-24189, and docketed in Hennepin County on February 15, 2011.

27.     Both judgments were docketed less than 90 days before the Filing Date.

## BENEFIT TO THE ESTATE

28.     The sale of the 1553 House is in the best interests of the estate because the purchase price is the best price obtainable under the circumstances and, application of the sale proceeds available after payment of brokerage commissions, real estate taxes, and other costs associated with closing will reduce the potential for deficiency claims that might otherwise be asserted by Wells Fargo and JPMorgan.

## GROUNDS FOR SALE FREE AND CLEAR

29.     The Debtor is authorized under Section 363(f) to sell the Property free and clear of the mortgage interests of JPMorgan and Wells Fargo because:

    a.     Wells Fargo and JPMorgan could be compelled, in legal or equitable proceedings, to accept money satisfaction of their respective interests; and

121285909v1 0906146 72096

b.    JPMorgan and Wells Fargo's interests are liens and the price at which the property subject to those liens is to be sold is greater than the aggregate value of all liens.

30.    In accordance with the Subordination Agreement, all sale proceeds remaining after payment of brokerage commissions, real estate taxes, and other costs associated with closing will be paid to JPMorgan to be applied to the balance owing under the JPMorgan Note.

31.    The Debtor is authorized under Section 363(f) to sell the Property free and clear of the judgments in favor of Crown Bank and Jordan Family LLC because both judgments are subject to avoidance under Section 547, and therefore are in bona fide dispute.

**EXPEDITED RELIEF**

32.    Expedited relief is necessary if the an order approving the sale can be entered in time for the sale to close by the agreed upon deadline.

33.    Although the purchase agreement and motion had been substantially completed by the first week in August, 2011, the Debtor was unable to sign the motion as a result of health issues.

**CONCLUSION**

34.    The Debtor gives notice that he may, if necessary, testify with respect to the relief sought herein.  The address of the prospective witness is 1555 Linner Road, Wayzata, Minnesota.

WHEREFORE, the Debtor requests that the Court enter an order approving the sale of the 1553 House on the terms described above and granting such further and additional relief as may be just and equitable.

121285909v1  0906146  72096

**HINSHAW & CULBERTSON LLP**

Dated:   August 30, 2011

 /e/ Joel D. Nesset
Thomas G. Wallrich (213354)
Joel D. Nesset (030475X)
2000 Accenture Tower
333 South Seventh Street
Minneapolis, MN 55402
Telephone:  612-333-3434
Fax:  612-334-8888

ATTORNEYS FOR DEBTOR

## VERIFICATION

I, Curtis C. Nelson the Debtor herein, hereby certify under penalty of perjury that the statements contained in the foregoing Notice of Hearing and Motion for: (I) Expedited Relief; and (II) Approval of Sale Free and Clear of Liens and Interests are true and correct to the best of my knowledge, information, and belief.

Dated:  August 29, 2011

Curtis C. Nelson

**EXHIBIT A**

**TO**

**NOTICE OF HEARING AND MOTION FOR: (I) EXPEDITED RELIEF; AND (II) APPROVAL OF SALE FREE AND CLEAR OF LIENS AND INTERESTS**



## PURCHASE AGREEMENT

This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2010 Minnesota Association of REALTORS®, Edina, MN

1. Date __July 27, 2011__

2. Page 1 of _____

3. RECEIVED OF __YuJin Han__

4.

5. the sum of __Twenty Thousand__ _____ Dollars ($ __20,000__ )

6. by ☒ CHECK ☐ CASH ☐ NOTE as earnest money to be deposited upon Final Acceptance of Purchase
   (Check one)

7. Agreement by all parties, on or before the third Business Day after Final Acceptance, in the trust account of listing

8. broker, unless otherwise agreed to in writing, but to be returned to Buyer if Purchase Agreement is not accepted

9. by Seller.

10. Said earnest money is part payment for the purchase of the property located at

11. Street Address: __1553 Linner Road__

12. City of __Minnetonka__, County of __Hennepin__,

13. State of Minnesota, legally described as __Lot 010 Blk 000 Superior__

14. __Blvd Gardens N 170 Ft of W 232 Ft__

15.

16.

17. including all fixtures on the following property, if any, owned by Seller and used and located on said property,

18. including but not limited to garden bulbs, plants, shrubs and trees; storm sash, storm doors, screens and awnings;

19. window shades, blinds, traverse and curtain and drapery rods; attached lighting fixtures and bulbs; plumbing

20. fixtures, water heater, heating plants (with any burners, non-fuel tanks, stokers and other equipment used in connection

21. therewith), built-in air-conditioning equipment, electronic air filter, water softener ☐ OWNED ☐ RENTED ☒ NONE,
    (Check one)

22. built-in humidifier and dehumidifier, liquid fuel tank(s) ☐ OWNED ☐ RENTED ☒ NONE and controls (if the
    (Check one)

23. property of Seller), sump pump; attached television antenna, cable TV jacks and wiring; BUILT-INS: dishwashers,

24. garbage disposals, trash compactors, ovens, cook-top stoves, microwave ovens, hood fans, intercoms;

25. ATTACHED: carpeting; mirrors; garage door openers and all controls; smoke detectors; fireplace screens, doors and

26. heatilators; AND the following personal property: _____

27. _____

28. _____

29. _____

30. all of which property Seller has this day agreed to sell to Buyer for sum of ($ __512,500__ )

31. __Five Hundred Twelve Thousand Five Hundred__ _____ Dollars,

32. which Buyer agrees to pay in the following manner:

33. 1. Cash of __20__ percent (%) of the sale price, or more in Buyer's sole discretion, which includes the earnest

34. money; PLUS

35. 2. Financing of __80__ percent (%) of the sale price, which will be the total amount secured against this property

36. to fund this purchase.

37. Such financing shall be (check one) ☒ a first mortgage; ☐ a contract for deed; or ☐ a first mortgage with

38. subordinate financing, as described in the attached Addendum:

39. ☒ Conventional ☐ FHA ☐ DVA ☐ Assumption ☐ Contract for Dead ☐ Other: _____
    (Check one)

40. The date of closing shall be __August 26__, 20 __11__.

MN:PA-1 (8/10)                                                                    ER 170-1 (8/10)

**Edina Realty**

42. Property located at 1553 Linner Road

43. This Purchase Agreement ☐ **IS** ☒ **IS NOT** subject to a *Contingency Addendum* for sale of Buyer's property.
   *(Check one.)*
44. (If answer is **IS**, see attached *Addendum*.)
45. (If answer is **IS NOT**, the closing of Buyer's property, if any, may still affect Buyer's ability to obtain financing, if financing
46. is applicable.)
47. This Purchase Agreement ☐ **IS** ☒ **IS NOT** subject to cancellation of a previously written purchase agreement
   *(Check one.)*
48. dated _____, 20 _____.
49. (If answer is **IS**, said cancellation shall be obtained no later than _____, 20 _____. If
50. said cancellation is not obtained by said date, this Purchase Agreement is canceled. Buyer and Seller shall immediately
51. sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid
52. hereunder to be refunded to Buyer.)

53. Buyer has been made aware of the availability of property inspections. Buyer ☒ **Elects** ☐ **Declines** to have a
   *(Check one.)*
54. property inspection performed at Buyer's expense.
55. This Purchase Agreement ☒ **IS** ☐ **IS NOT** subject to an *Inspection Contingency Addendum*.
   *(Check one.)*
56. (If answer is **IS**, see attached *Addendum*.)

57. **DEED/MARKETABLE TITLE:** Upon performance by Buyer, Seller shall deliver a
58. ☒ **Warranty Deed** or ☐ **Other:** _____ Deed joined in by spouse, if any, conveying
   *(Check one.)*
59. marketable title, subject to:
60. (a) building and zoning laws, ordinances, and state and federal regulations;
61. (b) restrictions relating to use or improvement of the property without effective forfeiture provisions;
62. (c) reservation of any mineral rights by the State of Minnesota;
63. (d) utility and drainage easements which do not interfere with existing improvements;
64. (e) rights of tenants as follows (unless specified, not subject to tenancies): _____
65. _____ ; and
66. (f) others (must be specified in writing): _____
67. _____
68. Seller shall pay on the date of closing all real estate taxes due and payable in all prior years including all penalties and
69. interest.
70. ☐ **BUYER SHALL PAY** ☒ **SELLER SHALL PAY** on date of closing any deferred real estate taxes (e.g., Green
   *(Check one.)*
71. Acres) or special assessments, payment of which is required as a result of the closing of this sale.
72. ☐ **BUYER AND SELLER SHALL PRORATE AS OF THE DATE OF CLOSING** ☒ **SELLER SHALL PAY ON**
   *(Check one.)*
73. **DATE OF CLOSING** all installments of special assessments certified for payment, with the real estate taxes due and
74. payable in the year of closing.
75. ☐ **BUYER SHALL ASSUME** ☒ **SELLER SHALL PAY** on date of closing all other special assessments levied as
   *(Check one.)*
76. of the date of this Purchase Agreement.
77. ☐ **BUYER SHALL ASSUME** ☒ **SELLER SHALL PROVIDE FOR PAYMENT OF** special assessments pending as
   *(Check one.)*
78. of the date of this Purchase Agreement for improvements that have been ordered by any assessing authorities. (Seller's
79. provision for payment shall be by payment into escrow of two (2) times the estimated amount of the assessments or
80. less, as required by Buyer's lender.)

82. Property located at <u>1553 Linner Road</u> 81

83. Buyer shall pay any unpaid special assessments payable in the year following closing and thereafter, the payment of
84. which is not otherwise herein provided.

85. As of the date of this Purchase Agreement, Seller represents that Seller ☐ HAS ☒ HAS NOT received a notice
86. *(Check one.)*
87. regarding any new improvement project from any assessing authorities, the costs of which project may be assessed
88. against the property. Any such notice received by Seller after the date of this Purchase Agreement and before closing
89. shall be provided to Buyer immediately. If such notice is issued after the date of this Purchase Agreement and on
90. or before the date of closing, then the parties may agree in writing, on or before the date of closing, to pay, provide
91. for the payment of or assume the special assessments. In the absence of such agreement, either party may declare
92. this Purchase Agreement canceled by written notice to the other party, or licensee representing or assisting the other
93. party, in which case this Purchase Agreement is canceled. If either party declares this Purchase Agreement canceled,
94. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and
95. directing all earnest money paid hereunder to be refunded to Buyer.

95. Buyer shall pay ☒ PRORATED FROM DAY OF CLOSING ☐ _____ 12ths OF ☐ ALL ☐ NO real estate taxes due
*(Check one.)*
96. and payable in the year 20 <u>11</u>

97. Seller shall pay ☒ PRORATED TO DAY OF CLOSING ☐ _____ 12ths OF ☐ ALL ☐ NO real estate taxes due and
*(Check one.)*
98. payable in the year 20 <u>11</u> . If the closing date is changed, the real estate taxes paid shall, if prorated, be adjusted
99. to the new closing date. Seller warrants taxes due and payable in the year 20 <u>11</u> shall be ☐ FULL ☐ PART ☒ NON-
*(Check one.)*
100. homestead classification.

101. If part- or non-homestead classification is checked, Seller agrees to pay Buyer at closing $ _____
102. toward the non-homestead real estate taxes. Buyer agrees to pay any remaining balance of non-homestead taxes
103. when they become due and payable. Buyer shall pay real estate taxes due and payable in the year following closing
104. and thereafter, the payment of which is not otherwise herein provided. No representations are made concerning the
105. amount of subsequent real estate taxes.

106. **POSSESSION:** Seller shall deliver possession of the property no later than <u>immediate</u> after closing.
107. All interest; unit owners' association dues; rents; and charges for city water, city sewer, electricity and natural gas shall
108. be prorated between the parties as of date of closing. Buyer shall pay Seller for remaining gallons of fuel oil or liquid
109. petroleum gas on the day of closing, at the rate of the last fill by Seller. Seller agrees to remove ALL DEBRIS AND
110. ALL PERSONAL PROPERTY NOT INCLUDED HEREIN from the property by possession date.

111. **TITLE AND EXAMINATION:** As quickly as reasonably possible after Final Acceptance of this Purchase Agreement:
112.     (a) Seller shall surrender any abstract of title and a copy of any owner's title insurance policy for the property, if
113.         in Seller's possession or control, to Buyer or Buyer's designated title service provider; and
114.     (b) Buyer shall obtain the title services determined necessary or desirable by Buyer or Buyer's lender, including
115.         but not limited to title searches, title examinations, abstracting, a title insurance commitment or an attorney's
116.         title opinion at Buyer's selection and cost and provide a copy to Seller.

117. Seller shall use Seller's best efforts to provide marketable title by the date of closing. Seller agrees to pay all costs
118. and fees necessary to convey marketable title including obtaining and recording all required documents, subject to the
119. following:

120. In the event Seller has not provided marketable title by the date of closing, Seller shall have an additional 30 days to
121. make title marketable, or in the alternative, Buyer may waive title defects by written notice to Seller. In addition to
122. the 30-day extension, Buyer and Seller may, by mutual agreement, further extend the closing date. Lacking such
123. extension, either party may declare this Purchase Agreement canceled by written notice to the other party, or
124. licensee representing or assisting the other party, in which case this Purchase Agreement is canceled. If either
125. party declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a *Cancellation of
126. Purchase Agreement* confirming said cancellation and directing all earnest money paid hereunder to be refunded
127. to Buyer.

MN:PA-3 (9/10)                                                         ER 170-3 (9/10)

129. SUBDIVISION OF LAND: If this sale constitutes or requires a subdivision of land owned by Seller, Seller shall pay
130. all subdivision expenses and obtain all necessary governmental approvals. Seller warrants that the legal description
131. of the real property to be conveyed has been or shall be approved for recording as of the date of closing. Seller warrants
132. that the buildings are or shall be constructed entirely within the boundary lines of the property. Seller warrants that
133. there is a right of access to the property from a public right-of-way. These warranties shall survive the delivery of the
134. deed or contract for deed.

135. Seller warrants that prior to the closing, payment in full will have been made for all labor, materials, machinery, fixtures
136. or tools furnished within the 120 days immediately preceding the closing in connection with construction, alteration or
137. repair of any structure on, or improvement to, the property.

138. Seller warrants that Seller has not received any notice from any governmental authority as to condemnation proceedings,
139. or violation of any law, ordinance or regulation. If the property is subject to restrictive covenants, Seller warrants that
140. Seller has not received any notice from any person or authority as to a breach of the covenants. Any such notices
141. received by Seller shall be provided to Buyer immediately.

142. Seller agrees to allow reasonable access to the property for performance of any surveys or inspections agreed to
143. herein.

144. RISK OF LOSS: If there is any loss or damage to the property between the date hereof and the date of closing for any
145. reason, including fire, vandalism, flood, earthquake or act of God, the risk of loss shall be on Seller. If the property
146. is destroyed or substantially damaged before the closing date, this Purchase Agreement is canceled, at Buyer's option,
147. by written notice to Seller or licensee representing or assisting Seller. If Buyer cancels this Purchase Agreement,
148. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and
149. directing all earnest money paid hereunder to be refunded to Buyer.

150. TIME OF ESSENCE: Time is of the essence in this Purchase Agreement.

151. ENTIRE AGREEMENT: This Purchase Agreement, any attached exhibits and any addenda or amendments signed
152. by the parties shall constitute the entire agreement between Seller and Buyer and supersedes any other written or
153. oral agreements between Seller and Buyer. This Purchase Agreement can be modified or canceled only in writing
154. signed by Seller and Buyer or by operation of law. All monetary sums are deemed to be United States currency for
155. purposes of this Purchase Agreement. Buyer or Seller may be required to pay certain closing costs, which may effectively
156. increase the cash outlay at closing or reduce the proceeds from the sale.

157. FINAL ACCEPTANCE: To be binding, this Purchase Agreement must be fully executed by both parties and a copy
158. must be delivered.

159. CALCULATION OF DAYS: Any calculation of days begins on the first day (calendar or Business Days as specified)
160. following the occurrence of the event specified and includes subsequent days (calendar or Business Days as specified)
161. ending at 11:59 P.M. on the last day.

162. BUSINESS DAYS: "Business Days" are days which are not Saturdays, Sundays or state or federal holidays unless
163. stated elsewhere by the parties in writing.

164. DEFAULT: If Buyer defaults in any of the agreements hereunder, Seller may terminate this Purchase Agreement
165. under the provisions of MN Statute 559.21. If either Buyer or Seller defaults in any of the agreements hereunder or
166. there exists an unfulfilled condition after the date specified for fulfillment, either party may cancel this Purchase
167. Agreement under MN Statute 559.217, Subd. 3. Whenever it is provided herein that this Purchase Agreement is
168. canceled, said language shall be deemed a provision authorizing a Declaratory Cancellation under MN Statute 559.217,
169. Subd. 4.

170. If this Purchase Agreement is not canceled or terminated as provided hereunder, Buyer or Seller may seek actual
171. damages for breach of this Purchase Agreement or specific performance of this Purchase Agreement; and, as to
172. specific performance, such action must be commenced within six (6) months after such right of action arises.

173. NOTICE REGARDING PREDATORY OFFENDER INFORMATION: Information regarding the predatory offender
174. registry and persons registered with the predatory offender registry under MN Statute 243.166 may be obtained
175. by contacting the local law enforcement offices in the community where the property is located or the Minnesota
176. **Department of Corrections at (651) 361-7200, or from the Department of Corrections web site at**
177. **www.corr.state.mn.us.**

ER 170-4 (9/10)

**Edina Realty**

179. Property located at __1553 Linner Road__

180. **HOME PROTECTION/WARRANTY PLAN:** Buyer and Seller are advised to investigate the various home protection/
181. warranty plans available for purchase. Different home protection/warranty plans have different coverage options,
182. exclusions, limitations and service fees. Most plans exclude pre-existing conditions. *(Check one.)*

183. ☐ A Home Protection/Warranty Plan will be obtained and paid by ☐ BUYER ☐ SELLER to be issued by _____
*(Check one.)*

184. _____ at a cost not to exceed $ _____

185. ☒ There will be no Home Protection/Warranty Plan as part of this Agreement.

186. **ENVIRONMENTAL CONCERNS:** To the best of Seller's knowledge, there are no hazardous substances or underground
187. storage tanks except herein noted: _____

188. _____

189. _____

190. _____

---

191. *(Check appropriate boxes.)*
192. SELLER WARRANTS THAT THE PROPERTY IS EITHER DIRECTLY OR INDIRECTLY CONNECTED TO:

193. **CITY SEWER** ☒ YES ☐ NO / **CITY WATER** ☒ YES ☐ NO

194. **SUBSURFACE SEWAGE TREATMENT SYSTEM**

195. SELLER CERTIFIES THAT SELLER ☐ DOES ☒ DOES NOT KNOW OF A SUBSURFACE SEWAGE TREATMENT
*(Check one.)*
196. SYSTEM ON OR SERVING THE PROPERTY. (If answer is DOES, and the system does not require a state permit,
197. see *Subsurface Sewage Treatment System Disclosure Statement*)

198. **PRIVATE WELL**

199. SELLER CERTIFIES THAT SELLER ☐ DOES ☒ DOES NOT KNOW OF A WELL ON OR SERVING THE
*(Check one.)*
200. PROPERTY. (If answer is DOES and well is located on the property, see *Well Disclosure Statement*.)

201. THIS PURCHASE AGREEMENT ☐ IS ☒ IS NOT SUBJECT TO A *SUBSURFACE SEWAGE TREATMENT SYSTEM*
*(Check one.)*
202. *AND WELL INSPECTION CONTINGENCY ADDENDUM.* (If answer is IS, see attached *Addendum*.)

203. IF A WELL OR SUBSURFACE SEWAGE TREATMENT SYSTEM EXISTS ON THE PROPERTY, BUYER HAS
204. RECEIVED A *WELL DISCLOSURE STATEMENT* AND/OR A *SUBSURFACE SEWAGE TREATMENT SYSTEM*
205. *DISCLOSURE STATEMENT.*

---

206. **NOTICE**

207. __Patti Jo Hermann__ is ☐ Seller's Agent ☐ Buyer's Agent ☒ Dual Agent ☐ Facilitator.
(Licensee)                                    *(Check one.)*

208. __Edina Realty__
(Real Estate Company Name)

209. __Joe Warren__ is ☐ Seller's Agent ☐ Buyer's Agent ☒ Dual Agent ☐ Facilitator.
(Licensee)                                    *(Check one.)*

210. __Edina Realty__
(Real Estate Company Name)

211. THIS NOTICE DOES NOT SATISFY MINNESOTA STATUTORY AGENCY DISCLOSURE REQUIREMENTS.

ER 170-6 (8/10)

MN:PA-6 (9/10)

213. Property located at _____

214. SELLER WARRANTS THAT CENTRAL AIR-CONDITIONING, HEATING, PLUMBING AND WIRING SYSTEMS USED
215. AND LOCATED ON SAID PROPERTY SHALL BE IN WORKING ORDER ON DATE OF CLOSING, EXCEPT AS
216. NOTED IN THIS PURCHASE AGREEMENT.

217. BUYER HAS THE RIGHT TO A WALK-THROUGH REVIEW OF THE PROPERTY PRIOR TO CLOSING TO
218. ESTABLISH THAT THE PROPERTY IS IN SUBSTANTIALLY THE SAME CONDITION AS OF THE DATE OF
219. THIS PURCHASE AGREEMENT.

220. BUYER [X] HAS [ ] HAS NOT RECEIVED A *SELLER'S PROPERTY DISCLOSURE STATEMENT* OR A
     *(Check one.)*
221. *SELLER'S DISCLOSURE ALTERNATIVES* FORM.

222. BUYER HAS RECEIVED THE INSPECTION REPORTS, IF REQUIRED BY MUNICIPALITY. SELLER AGREES TO
223. NOTIFY BUYER IMMEDIATELY IN WRITING OF ANY SUBSTANTIVE CHANGES FROM ANY PRIOR
224. REPRESENTATIONS REGARDING THE PROPERTY.

225. IN THE EVENT BUYER AND SELLER HAVE ELECTED 'WAIVER' ON THE *SELLER'S DISCLOSURE ALTERNATIVES*
226. FORM, THEN DO NOT COMPLETE LINES 227-232.

227. BUYER ACKNOWLEDGES THAT NO ORAL REPRESENTATIONS HAVE BEEN MADE REGARDING POSSIBLE
228. PROBLEMS OF WATER IN BASEMENT OR DAMAGE CAUSED BY WATER ICE OR ICE BUILDUP ON ROOF OF
229. THE PROPERTY, AND BUYER RELIES SOLELY IN THAT REGARD ON THE FOLLOWING STATEMENT BY
230. SELLER.

231. SELLER [ ] HAS [X] HAS NOT HAD A WET BASEMENT AND [ ] HAS [X] HAS NOT HAD ROOF, WALL OR
              *(Check one.)*                                    *(Check one.)*
232. CEILING DAMAGE CAUSED BY WATER OR ICE BUILDUP.

233.                        **DUAL AGENCY REPRESENTATION**
234. PLEASE CHECK *ONE* OF THE FOLLOWING SELECTIONS:

235. [ ] Dual Agency representation *DOES NOT* apply in this transaction. *Do not complete lines 236-252.*

236. [X] Dual Agency representation *DOES* apply in this transaction. *Complete the disclosure in lines 237-252.*

237. Broker represents both the Seller(s) and the Buyer(s) of the property involved in this transaction, which creates a
238. dual agency. This means that Broker and its salespersons owe fiduciary duties to both Seller(s) and Buyer(s). Because
239. the parties may have conflicting interests, Broker and its salespersons are prohibited from advocating exclusively for
240. either party. Broker cannot act as a dual agent in this transaction without the consent of both Seller(s) and Buyer(s).
241. Seller(s) and Buyer(s) acknowledge that

242.    (1) confidential information communicated to Broker which regards price, terms, or motivation to buy or sell will
243.        remain confidential unless Seller(s) or Buyer(s) instructs Broker in writing to disclose this information. Other
244.        information will be shared;

245.    (2) Broker and its salespersons will not represent the interest of either party to the detriment of the other; and

246.    (3) within the limits of dual agency, Broker and its salespersons will work diligently to facilitate the mechanics of
247.        the sale.

248. With the knowledge and understanding of the explanation above, Seller(s) and Buyer(s) authorize and instruct Broker
249. and its salesperson to act as dual agents in this transaction.

250. Seller _____   Buyer _____

251. Seller _____   Buyer _____

252. Date _____7/29/11_____   Date _____7/27/2011_____

**Edina Realty**

254. Property located at 1553 Linner Road  255. Page 7 Date July 27, 2011

255. OTHER: _____

256. _____

257. _____

258. _____

259. Other addenda may be attached which are made a part of this Purchase Agreement. (Enter total number of pages of
260. this Purchase Agreement, including addenda, on line two (2) of page one (1).)

261. I, the owner of the property, accept this Purchase
262. Agreement and authorize the listing broker to withdraw
263. said property from the market, unless instructed
264. otherwise in writing.
265. I have reviewed all pages of this Purchase Agreement.
266. ☒ If checked, this Purchase Agreement is subject to
267. attached Counteroffer Addendum.

I agree to purchase the property for the price and on
the terms and conditions set forth above
I have reviewed all pages of this Purchase
Agreement.

268. X _Curtis C M_   7/29/11
(Seller's Signature)   (Date)

X _____
(Buyer's Signature)   (Date)

269. X _Curtis C Nelson_
(Seller's Printed Name)

X _YO SIN HAN_
(Buyer's Printed Name)

270. X _Divorced_
(Marital Status)

X _Single_
(Marital Status)

271. X _Marjorie Nelson_  7/29/11
(Seller's Signature)   (Date)

X _____
(Buyer's Signature)   (Date)

272. X _Marjorie Nelson_
(Seller's Printed Name)

X _____
(Buyer's Printed Name)

273. X _Single_
(Marital Status)

X _____
(Marital Status)

274. FINAL ACCEPTANCE DATE 8 - 1 - 11

275.   THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).
276. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

277. I ACKNOWLEDGE THAT I HAVE RECEIVED AND HAVE HAD THE OPPORTUNITY TO REVIEW THE ARBITRATION
278. DISCLOSURE AND RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT, WHICH IS AN OPTIONAL,
279. VOLUNTARY AGREEMENT AND IS NOT PART OF THIS PURCHASE AGREEMENT.

280. SELLER(S) _Curtis M_

BUYER(S) _____

281. SELLER(S) _Marjorie Nelson_

BUYER(S) _____

MN:PA-7 (9/10)

ER 170-7 (9/10)



**INSPECTION CONTINGENCY ADDENDUM**
This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2010 Minnesota Association of REALTORS®, Edina, MN

1. Date _July 27, 2011_

2. Page _____

3.
4. **THE PROPERTY, IF NOT NEW, CANNOT BE EXPECTED TO BE IN NEW CONDITION.**
**ROUTINE MAINTENANCE ITEMS ARE NOT PART OF THIS ADDENDUM.**

5. Addendum to Purchase Agreement between parties, dated _7/27/2010_, 20 _11_, pertaining
6. to the purchase and sale of the property at _1553 Linner Road, Minnetonka,_
7. _MN   55391_

8. This Purchase Agreement is contingent upon a complete home inspection(s) of the property to determine its condition.
9. Any and all inspections performed by Buyer shall constitute a complete home inspection(s).

10. Any inspection(s) shall be done by an inspector(s) of Buyer's choice. The inspector(s) should be qualified to do the
11. inspection(s), as evidenced by a license or professional designation. **Buyer shall satisfy Buyer as to the qualifications**
12. of the inspector(s).

13. Said inspection(s) shall be at Buyer's sole expense.

14. Seller agrees to make the property reasonably available for said inspection(s).

15. Any inspection(s) or test(s) done by FHA, DVA or any other governmental unit shall be done and paid for in accordance
16. with the applicable regulations and are not part of this Inspection Contingency Addendum.

17. Buyer shall not have the right to do intrusive testing without the prior written authorization of Seller.

18. For purposes of this form, "intrusive testing" shall mean any testing, inspection(s) or investigation(s) that changes the
19. property from its original condition or otherwise damages the property.

20. Seller ☐ DOES ☒ DOES NOT agree to allow Buyer to perform intrusive testing or inspection(s).
    ───(Check one.)───

21. If answer is DOES, Buyer agrees that the property shall be returned to the same condition it was in prior to Buyer's
22. intrusive testing at Buyer's sole expense.

23. **For the purposes of this Addendum, "Business Days" shall end at 11:59 p.m. and do not include Saturdays,**
24. **Sundays and state and federal holidays.**

25. All inspection(s) shall be done within _3_ Business Days of Final Acceptance of this Purchase Agreement.
26. Buyer shall have these options following inspection(s):
27. (1)    If Buyer, or licensee representing or assisting Buyer, identifies any issues pertaining to the property resulting
28.        from the inspection(s) and intends to negotiate the identified issues with Seller, then Buyer, or licensee
29.        representing or assisting Buyer, shall notify Seller, or licensee representing or assisting Seller, in writing,

30.        describing the issues and proposed remedy, within _1_ Business Days after expiration of the time
31.        period specified on line 25.

32.        If Buyer, or licensee representing or assisting Buyer, notifies Seller, or licensee representing or assisting

33.        Seller, of the identified issues and proposed remedy, and if within _1_ Business Days after such
34.        notice Buyer and Seller have not agreed in writing to a remedy of the identified issues, this Purchase Agreement
35.        is canceled without further notice required. Buyer and Seller shall immediately sign a *Cancellation of*
36.        *Purchase Agreement* confirming said cancellation and directing all earnest money paid hereunder to be
37.        refunded to Buyer, and thereafter neither party shall have any further liability to the other.

38. And/or;

39.        **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).**
40.        **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

MN:ICA-1 (9/10)

ER 111-1 (9/10)



**INSPECTION CONTINGENCY ADDENDUM**

41. Date <u>July 27, 2011</u>

42. Page _____

43. Property located at <u>1553 Linner Road</u>

44. (2) Notwithstanding any provision to the contrary or any notice given, Buyer may unilaterally waive any issues,
45. providing that Buyer, or licensee representing or assisting Buyer, notifies Seller, or licensee representing or
46. assisting Seller, of waiver in writing, within the time specified on line 38.

47. And/or;

48. (3) Notwithstanding any other provision of this Purchase Agreement, Buyer may, based on the inspection(s),
49. declare this Purchase Agreement canceled by written notice to Seller, or licensee representing or assisting
50. Seller, within _____|_____ Business Days after expiration of the time period specified on line 25, in which case
51. this Purchase Agreement is canceled.

52. In the event Buyer declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign
53. a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid
54. hereunder to be refunded to Buyer.

55. If Buyer fails to have the inspection(s) performed within the time specified in line 25, or does not notify Seller, or licensee
56. representing or assisting Seller, of Buyer's decision within the time specified in lines 30 and 50, then this Contingency
57. shall be deemed removed and this Purchase Agreement shall be in full force and effect.

58. Nothing herein invalidates the warranties agreed to in lines 214–216 of this Purchase Agreement.

59. Seller, or licensee representing or assisting Seller, ☑ **SHALL** ☐ **SHALL NOT** have the right to continue to offer
   (Check one)
60. the property for sale until this Contingency is removed.

61. __(Seller)__ __7/29/11__ (Date)    __(Buyer)__ __7/29/2011__ (Date)

62. __Marjorie Nelson__ __7/29/11__ (Seller) (Date)    __(Buyer)__ __(Date)__

63.         **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).**
64.   **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

MN:ICA-2 (9/10)

ER 111-2 (9/10)

07/29/2011 16:49 18582889688                    COUNTRYINNSUITES                    #1957 P.013/028



**FINANCING ADDENDUM**
**CONVENTIONAL OR PRIVATELY**
**INSURED CONVENTIONAL MORTGAGE**
This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2010 Minnesota Association of REALTORS®, Edina, MN

1. Date  July 27, 2011

2. Page

3. Addendum to Purchase Agreement between parties, dated 7/27 , 20 11 , pertaining to the
4. purchase and sale of the property at 1553 Linear Road

5.
6. There ☐ IS ☒ IS NOT a *Buyer's Financial Disclosure Statement* submitted with this Purchase Agreement.
   *(Check one.)*

7. Financing will be a ☒ FIRST MORTGAGE only ☐ FIRST MORTGAGE AND SUBORDINATE FINANCING.
   *(Check one.)*

8. Buyer shall apply for and secure, at Buyer's expense, a
9. ☒ CONVENTIONAL ☐ PRIVATELY INSURED CONVENTIONAL  *fixed*  First Mortgage
   *(Check one.)*  (e.g., fixed, ARM)

10. amortized monthly over a period of not more than 30 years, with an initial mortgage interest rate at
11. no more than 5.5 percent (%) per annum.
12. The mortgage application IS TO BE MADE WITHIN FIVE (5) BUSINESS DAYS after the Final Acceptance of this Purchase
13. Agreement. Buyer agrees to use best efforts to secure a commitment for such financing and to execute all documents
14. required to consummate said financing.

15. FINANCING CONTINGENCY: This Purchase Agreement is contingent upon the following and applies to the first
16. mortgage and any subordinate financing.
17. *(Check one.)*

18. ☐ If Buyer cannot secure the financing specified in this Purchase Agreement, and this Purchase Agreement does not
19. close on the closing date specified, this Purchase Agreement is canceled. Buyer and Seller shall immediately
20. sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money to be
21. ☐ REFUNDED TO BUYER ☐ FORFEITED TO SELLER.
    *(Check one.)*

22. ☒ Buyer shall provide Seller, or licensee representing or assisting Seller, with the Written Statement, on
23. or before 8/23 , 20 11 .

24. For purposes of this Contingency, **"Written Statement"** means a Written Statement prepared by Buyer's mortgage
25. originator(s) or lender(s) after the Final Acceptance Date that Buyer is approved for the loan(s) specified in this
26. Purchase Agreement, including both the first mortgage and any subordinate financing, if any, and stating that an
27. appraisal, satisfactory to the lender(s), has been completed and stating conditions required by lender(s) to close
28. the loan.

29. Upon delivery of the Written Statement to Seller, or licensee representing or assisting Seller, the responsibility
30. for satisfying all conditions, except work orders, required by mortgage originator(s) or lender(s) are deemed
31. accepted by Buyer. Upon delivery of the Written Statement, if this Purchase Agreement does not close on the
32. stated closing date for ANY REASON relating to financing, other than Seller's failure to complete work orders to
33. the extent required by this Purchase Agreement, including but not limited to interest rate and discount points, if
34. any, Seller may, at Seller's option, declare this Purchase Agreement canceled, in which case this Purchase Agreement
35. is canceled. If Seller declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a
36. *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid hereunder
37. to be forfeited to Seller as liquidated damages. In the alternative, Seller may seek all other remedies allowed by
38. law.

39. If the Written Statement is not provided by the date specified on line 23, this Purchase Agreement is canceled.
40. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and
41. directing all earnest money paid hereunder to be refunded to Buyer.

42. **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).**
43. **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

MN:FACM-1 (8/10)                                                        ER 175-1 (8/10)



44.                                                    Page _____

45. Property located at __1553 Linner Road__

46. **PRIVATE MORTGAGE INSURANCE (PMI):** PMI may be required by the lending institution(s). Buyer agrees to pay
47. all subsequent years' mortgage insurance premiums as required by the lending institution(s). The said mortgage
48. insurance premiums will increase the mortgage amount unless paid in cash at closing.

49. **DISCOUNT POINTS:** If Seller has agreed to pay discount points pursuant to this Purchase Agreement, a *Seller's*
50. *Contribution to Buyer's Costs Addendum* must be attached. Nothing in this Purchase Agreement shall prohibit Buyer
51. from paying any mortgage discount points.

52. **LOCKING OF MORTGAGE INTEREST RATE (RATE):** The Rate shall be locked with the lender(s) by Buyer
53. *(check one):*

54. ☒ WITHIN FIVE (5) BUSINESS DAYS OF FINAL ACCEPTANCE OF THIS PURCHASE AGREEMENT; OR

55. ☐ AT ANY TIME PRIOR TO CLOSING OR AS REQUIRED BY LENDER(S).

56. **LENDER COMMITMENT WORK ORDERS:** Nothing in this Purchase Agreement shall be construed as a
57. warranty that Seller shall make repairs required by the lender commitment. However, Seller agrees to pay up to
58. $ _____0_____ to make repairs as required by the lender commitment. If the lender commitment
59. is subject to any work orders for which the cost of making said repairs shall exceed this amount, Seller shall have the
60. following options:
61. (a) making the necessary repairs; or
62. (b) negotiating the cost of making said repairs with Buyer; or
63. (c) declaring this Purchase Agreement canceled, in which case this Purchase Agreement is canceled. Buyer and Seller
64. shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest
65. money paid hereunder to be refunded to Buyer, unless Buyer provides for payment of the cost of said repairs or
66. escrow amounts related thereto above the amount specified on line 58 of this Addendum.

67. **OTHER:** _____
68. _____
69. _____
70. _____
71. _____
72. _____
73. _____
74. _____
75. _____

76. _Scott C. M_____ _7/29/11_
    (Seller)               (Date)                    (Buyer)                (Date)

77. _Marjorie Nelson_ _7/29/11_
    (Seller)               (Date)                    (Buyer)                (Date)

78.        **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).**
79.        **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

MN:FACM-2 (8/10)

ER 175-2 (8/10)



1. Date **July 27, 2011**

2. IN CONSIDERATION OF THE PAYMENT OF ONE DOLLAR ($1.00) AND OTHER GOOD AND VALUABLE CONSIDERATION,
3. receipt of which is hereby acknowledged, _____ of the county of

4. _____ *Hennepin* _____ (Seller)

5. _____ *Yu Jin Han* _____ State of Minnesota, hereby agrees to sell and convey to
   (Buyer) _____ the following

6. described Goods, Chattels and Personal Property:

① Range
② Refrigerator
③ Microwave
④ Dishwasher
⑤ exhaust hood

7.
8. ER 116-1 (3/08)

**THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYERS AND SELLERS
IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL**



8. The sale and conveyance of the above Personal Property is subject to the successful closing of the Purchase Agreement between
10. the parties dated _____ 7/27 _____ pertaining to the purchase of the property at
11. _____ 553 Linner Road _____ (Star)
12. In the event the sale of the above described property does not close, this Agreement shall become null and void, with the parties
13. having no further obligation to perform any terms of this Agreement.

14. Seller hereby covenants and warrants that he is the lawful owner of said Personal Property, and that said Personal Property will be free
15. and clear from all encumbrances at the time of sale. It is understood the Buyer accepts the Personal Property "as is." Upon the successful
16. closing of the real estate sale of the above referenced Personal Property, the seller will deliver a Bill of Sale to the Buyer for the above
17. Personal Property.

18. _____ 7/29/11 _____ 7/27/2011
    (Seller)          (Date)                (Buyer)        (Date)
19. _Marjorie Nelson_ 7/29/11 _____ _____
    (Seller)          (Date)                (Buyer)        (Date)

20.               **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYERS AND SELLERS**
21. ER 116-2 (3/08)   **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL**



## BUYER PURCHASING "AS IS" ADDENDUM

This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2010 Minnesota Association of REALTORS®, Edina, MN

1. Date __July 28, 2011__

2. Page _____

3. Addendum to Purchase Agreement between parties, dated __July 27_____, 20 __11__, pertaining

4. to the purchase and sale of the property at __1553 Linner Road__

5. __Minnetonka__                                          MN                               55391

6. **DISCLOSURE REQUIRED:** Under Minnesota law, Sellers of residential property, except by waiver or with limited
7. exceptions, are obligated to disclose to prospective Buyers all material facts of which Seller is aware that could adversely
8. and significantly affect an ordinary Buyer's use or enjoyment of the property or any intended use of the property of
9. which Seller is aware. Such a disclosure is not a warranty or a guarantee of any kind by Seller or licensee representing
10. or assisting any party in the transaction. Seller agrees to notify Buyer immediately in writing of any substantive changes
11. from any prior representations regarding the property.

12. *(Check appropriate box.)*

13. ☑  Buyer has received and had an opportunity to review the *Seller's Property Disclosure Statement;*
14.      or

15. ☐  Buyer has received and had an opportunity to review the *Seller's Disclosure Alternatives* form.

16. **CONDITION OF PROPERTY:** The property being purchased by Buyer, including the dwelling, other improvements
17. and fixtures, is not new and is being purchased "AS IS".

18. Buyer understands that the property, as defined above, will be purchased in the condition it is in at the time of Purchase
19. Agreement. Buyer shall have the right to a walk-through review of the property prior to closing. To the extent there
20. is a material change in the condition of the property arising between the date of the Purchase Agreement and the
21. closing date, Seller shall be responsible for restoring the property to substantially the same condition it was in on the
22. date of the Purchase Agreement, except that Seller shall have **NO OBLIGATION OR RESPONSIBILITY** to repair or
23. replace central air-conditioning, heating, plumbing (including subsurface sewage treatment systems, unless otherwise
24. required by law), wiring systems or wells on the property if they fail between the date of the Purchase Agreement and the
25. date of closing. This provision voids lines 214–216 of the Purchase Agreement.

26. **RISK OF LOSS:** The Risk of Loss provision in the Purchase Agreement is modified as follows. If there is any loss
27. or damage to the property between the date of Purchase Agreement and the date of closing for any reason, including fire,
28. vandalism, flood, earthquake or act of God, the risk of loss shall be on Seller except that Seller shall have **NO**
29. **OBLIGATION OR RESPONSIBILITY** to repair or replace central air-conditioning, heating, plumbing (including subsurface
30. sewage treatment systems, unless otherwise required by law), wiring systems or wells on the property if they fail between
31. the date of Purchase Agreement and the date of closing. If the property is destroyed or substantially damaged before
32. the closing date, this Purchase Agreement is canceled, at Buyer's option, by written notice to Seller or licensee
33. representing or assisting Seller. If Buyer cancels this Purchase Agreement, Buyer and Seller shall immediately sign
34. a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid hereunder
35. to be refunded to Buyer.

36. **RIGHT OF INSPECTION:** Buyer shall have the **right** to inspect the property or to have it inspected by a person of
37. Buyer's choice, at Buyer's expense.

38.         **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).**
39.      **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

MN:BPAfA-1 (9/10)

ER 189-1 (9/10)

WEB*Forms*™ Sep/2010



**BUYER PURCHASING "AS IS" ADDENDUM**

40. Page _____

41. Property located at 1553 Linner Road _____ Minnetonka _____ 55391

42. **SETTLEMENT IS FINAL:** It is understood that Buyer accepts the property "AS IS." ANY WARRANTIES OF PHYSICAL
43. CONDITION OF THE PROPERTY CONTAINED IN THIS PURCHASE AGREEMENT INCLUDING, BUT NOT LIMITED
44. TO, CENTRAL AIR-CONDITIONING, HEATING, PLUMBING, WIRING, AND CONNECTION TO CITY SEWER AND
45. CITY WATER ARE VOID. This provision shall survive delivery of the deed or contract for deed. All other warranties
46. specified in the Purchase Agreement remain the same.

47. **OTHER:**

48. _____
49. _____
50. _____
51. _____
52. _____
53. _____
54. _____
55. _____
56. _____
57. _____
58. _____
59. _____
60. _____

61. _____ C. M_ 7/27/11          _____ 8/1/11
    (Seller)              (Date)           (Buyer)              (Date)

62. Marjorie Nelson 7/29/11          _____
    (Seller)              (Date)           (Buyer)              (Date)

63.         **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).**
64.     **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

MN:BPAIA-2 (9/10)

ER 189-2 (9/10)

WEBForms™ Sep/2010



## COUNTEROFFER ADDENDUM

This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2007 Minnesota Association of REALTORS®, Edina, MN.

1. Date __July 28, 2011__

2. Page _____

3. Addendum to Purchase Agreement, **Counteroffer Number** _1_

4. by ☐ Buyer ☑ **Seller** to the Purchase Agreement, dated _July 27_ _____, 20 _11_
   (Check one.)

5. and signed by Buyer, _YuJin Han_

6. pertaining to the purchase and sale of the property located at _1553 Linner Road_

7. _Minnetonka_                                                                            _55391_

8. **[CAUTION: This Counteroffer Addendum does not include the terms or conditions in any other**
9. **counteroffer.]**

10. The Purchase Agreement is rejected and the following Counteroffer is hereby made. All terms and conditions remain
11. the same, as stated in the Purchase Agreement, except the following:

12. *(Select appropriate changes from original offer.)*

13. ☐ Sale price shall be $ _____.

14. ☐ Earnest money shall be a total of $ _____

15. ☐ Cash of at least _____ percent (%) of the sale price, which includes the earnest money; PLUS;

16. ☐ Financing, the total amount secured against the property to fund the purchase, not to exceed _____
17. percent (%) of the sale price.

18. ☐ Closing date shall be _____, 20 ____.

19. ☐ Seller agrees to complete all FHA/Lender required repairs, not to exceed $ _____

20. ☐ Seller shall pay Buyer's closing costs, prepaids, insurance and _N/A_
21. not to exceed $ _____

22. ☐ Possession shall be on _____, 20 ____.

23. ☑ Other:

24. This contract is subject to approval of the United States Bankruptcy Court for the District of Minnesota, and
25. will become effective upon entry of an order approving of the terms hereof.
26.
27.

28. _(Seller's Signature)_     _7/29/11_ _(Date)_          _(Buyer's Signature)_     _8/1/11_ _(Date)_

29. _Marjorie Nelson_ _(Seller's Signature)_     _7/29/11_ _(Date)_          _(Buyer's Signature)_     _(Date)_

30. This Counteroffer Addendum is ☐ REJECTED ☐ COUNTERED _____ _____
    (Check one.)                                              (Initial)  (Initial)

31.      **ATTACH ONLY THE FINAL COUNTEROFFER ADDENDUM TO THE PURCHASE AGREEMENT.**

32.      **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).**
33.      **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

ER 157-1 (07/07)
WEBForms™ Jul/2009

279. Property located at [redacted]

280. **F.** NOTICE REGARDING PREDATORY OFFENDER INFORMATION. Information regarding the predatory
281. offender registration and persons registered under the predatory offender registry under MN Statute 243.166
282. may be obtained by contacting the local law enforcement agency in the community where this property
283. is located, or the Minnesota Department of Corrections at (651) 361-7200, or from the Department of
284. Corrections web site at www.corr.state.mn.us.

285. LISTING BROKER AND LICENSEES MAKE NO REPRESENTATIONS AND ARE
286. NOT RESPONSIBLE FOR ANY CONSEQUENCES REGARDING THIS PROPERTY.

287. **G. SELLER'S STATEMENT:**
288. (To be signed at time of listing.)
289. Seller(s) hereby states the material facts as stated above are true and accurate and authorizes any licensee(s)
290. representing or assisting any party(ies) in this transaction to provide a copy of this Disclosure to any person or
291. entity in connection with any actual or anticipated sale of the property.

292. (Seller) _Marjorie Nelson_    7/18/11    (Seller) _S. D. C. M._    7/29/11    (Date)

293. **H.** BUYER'S ACKNOWLEDGEMENT:
294. (To be signed at time of purchase agreement.)
295. I/We, the Buyer(s) of the property, acknowledge receipt of this Seller's Property Disclosure Statement and agree
296. that no representations regarding material facts have been made other than those made above.

297. (Buyer) _____ 7/29/2011    (Buyer) _____    (Date)

298. **I.** SELLER'S ACKNOWLEDGEMENT:
299. (To be signed at time of purchase agreement.)
300. AS OF THE DATE BELOW, I/we, the Seller(s) of the property, state that the material facts stated above are the
301. same, except for changes as indicated below, which have been signed and dated.

302. _____
303. _____
304. _____
305. _____
306. _____

307. (Seller) _Marjorie Nelson_ 8/2/11    (Seller) _S. D. C. M._    7/29/11    (Date)

308. For purposes of the seller disclosure requirements of MN Statutes 513.52 through 513.60:
309. "Residential real property" or "residential real estate" means property occupied as, or intended to be occupied as, a
310. single-family residence, including a unit in a common interest community as defined in MN Statute 515B.1-103, clause
311. (10), regardless of whether the unit is in a common interest community not subject to chapter 515B.

312. The seller disclosure requirements of MN Statutes 513.52 through 513.60 apply to the transfer of any interest in
313. residential real estate, whether by sale, exchange, deed, contract for deed, lease with an option to purchase or any
314. other option.

315. ORIGINAL COPY TO LISTING BROKER; COPIES TO SELLER, BUYER, SELLING BROKER.

MN-PDS-4 (5/75)

**Edina Realty**

**AMENDMENT TO PURCHASE AGREEMENT**
This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2006 Minnesota Association of REALTORS®, Edina, MN

1.  Date ___August 5, 2011___

2.  The undersigned parties to a Purchase Agreement, dated ___7/27___ , 20 __11__ , pertaining to

3.  the purchase and sale of the property at __1553 Linner Road__

4.  _____

5.  hereby mutually agree to amend said Purchase Agreement as follows:

6.  The buyer has performed an inspection on the property. Based on the results of the inspection,

7.  The buyer and seller mutually agree to reduce the sale price from $512,500 to $480,000.

8.  _____

9.  The closing must take place on or before 9/16. If the home does not close by the date given, the contract is

10. void and the earnest money shall be returned to the buyer unless an extension is mutually agreed to by

11. the sellers and the buyer.

12. _____

13. _____

14. _____

15. _____

16. _____

17. _____

18. _____

19. _____

20. _____

21. _____

22. _____

23. _____

24. _____

25. _____

26. _____

27. _____

28. _____

29. _____

30. All other terms and conditions of the Purchase Agreement to remain the same.

31. _____ 3/7/11      _____ 9/5/11
    (Seller)        (Date)           (Buyer)        (Date)

32. __Marjorie Nelson__ 8/7/11      _____ _____
    (Seller)        (Date)           (Buyer)        (Date)

33.     **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYERS AND SELLERS.**
34.     **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

ER 101 (11/06)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Curtis C. Nelson,

Debtor.

Case No.:11-43113

Chapter 11 Case

---

## MEMORANDUM OF LAW

---

Curtis C. Nelson (the "Debtor") submits this Memorandum of Law in support of his Motion for: (I) Expedited Relief; and (II) Approval of Sale Free and Clear of Liens and Interests (the "Motion").

## I.  STATEMENT OF FACTS

The Debtor relies on the facts set forth in the Motion and incorporates the same herein by this reference.

## II.  STATEMENT OF LAW AND ARGUMENT

Section 363(b)(1) of the Bankruptcy Code provides that the debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Section 363 motions should typically be granted as long as the debtor articulates a valid and reasonable business judgment supporting the proposed transaction.  Once a debtor articulates a valid business justification for a proposed sale of assets of the estate, the business judgment rule presumes that in making the business decision, the debtor acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company.  *In re SNA Nut Company*, 186 B.R. 98 (Bankr. N.D. Ill 1995).  In this case, the sale of the 1553 House will enable the Debtor to pay down secured debt.  By doing so, the Debtor will increase the prospects for a sale of the 1555 House for an amount sufficient to satisfy

secured claims that would otherwise become unsecured deficiency claims. The sale of the 1553 House, therefore, is in the best interests of the estate.

The Debtor is seeking authority to sell the 1553 House free and clear of liens and interests, including the JPMorgan Mortgage, the 2003 Wells Mortgage, the interests of Marjorie Nelson under the Original Decree and the Amended Decree, and the judgments held by Crown Bank and Jordan Family, LLC. Section 363(f) provides that the trustee may sell property under Section 363(b) free and clear of any interest in such property of an entity other than the estate only if one of five conditions exist:

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Marjorie Nelson has consented to the sale. Because the judgments were docketed less than 90 days before the Filing Date, they are subject to avoidance and are therefore in bona fide dispute. *See In re Gaylord Grain L.L.C.*, 306 B.R. 624, 627-628 (8th Cir. BAP 2004) (Determination that lien is in bona fide dispute does not require "immediate or concurrent adversary proceeding."). Finally, the Debtor is authorized to sell free and clear of JPMorgan and Wells Fargo's interests are liens and the price for which the 1553 House is to be sold is greater than the aggregate value of those liens.

WHEREFORE, the Debtor requests that the Court enter an order approving the sale of the 1553 House and granting such further and additional relief as may be just and equitable.

121285909v1  0906146  72096

Dated: August 30, 2011

**HINSHAW & CULBERTSON LLP**


 /e/ Joel D. Nesset
Thomas G. Wallrich (213354)
Joel D. Nesset (030475X)
2000 Accenture Tower
333 South Seventh Street
Minneapolis, MN 55402
Telephone: 612-333-3434
Fax: 612-334-8888

ATTORNEYS FOR DEBTOR

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:                                           Case No.:  11-43113

Curtis C. Nelson,
                                                  Chapter 11 Case
            Debtor.

---

## PROOF OF SERVICE

---

    Linda M. Swanson, an employee of Hinshaw & Culbertson LLP, and in the course of said employment on August 30th, 2011 caused the following documents:

1.    Notice of Hearing and Motion for: (I) Expedited Relief; and (II) Approval of Sale Free and Clear of Liens and Interests;

2.    Memorandum of Law; and

3.    Order Approving Sale Free and Clear of Liens and Interests;

to be served upon the parties by enclosing a true and correct copy of same in an envelope, properly addressed and postage prepaid, and depositing same in the United States mail and to be filed electronically with the Clerk of Court through ECF, and states that a copy of the above-referenced documents was delivered to the people listed below who are Filing Users, by automatic e-mail notification pursuant to the Electronic Case Filing System and this notice constitutes service or notice pursuant to Local Rule 9006-1(a).

| | |
|---|---|
| Michael Fadlovich | michael.fadlovich@usdoj.gov |
| David B Galle | dgalle@oppenheimer.com |
| Andrea M. Hauser | ahauser@losgs.com, swood@losgs.com |
| Kyle J Hegna | khegna@wilkersonhegna.com, mkavanaugh@wilkersonhegna.com |
| Christopher J Johnston | cjohnston@wilkersonhegna.com, mkavanaugh@wilkersonhegna.com |
| Brian F Leonard | bleonard@losgs.com, swood@losgs.com |
| Christopher K Loftus | c.loftus@gurstel.com, s.nelson@gurstel.com |
| Tyler K Olson | tolson@oppenheimer.com |
| Justin L Seurer | Justin@SeurerLaw.com |
| Rebecca G. Sluss | rsluss@oppenheimer.com |
| Will R. Tansey | wrtansey@ravichmeyer.com |
| US Trustee | ustpregion12.mn.ecf@usdoj.gov |
| Jane Welch | jwelch@morrisonfenske.com, elundgren@morrisonfenske.com |

Dated:  August 30, 2011          /s/ Linda M. Swanson
_____
                                 Linda M. Swanson

121286406v1  0906146

## Service List

Internal Revenue Service
STOP 5700
30 E. 7th Street
Suite No. 1222
St. Paul, MN 55101

District Director of IRS
30 East 7th Street
Stop 5700
Suite 1222
St. Paul, MN 55101

US Attorney
300 South Fourth Street
#600
Minneapolis, MN 55415

District Counsel of IRS
650 Galtier Plaza
380 Jackson Street
St. Paul, MN 55101

MN Dept. of Revenue
Coll Enf Unit
551 Bky Sec., P.O. Box 64447
St. Paul, MN 55164

Minnesota Dept. of Revenue
P.O. Box 64650
St. Paul, MN 55164-0650

Yujin (Gene) Jhan
400 North First Street, Apt. 606
Minneapolis, MN 55401-1396

Wells Fargo Bank, N.A.
Home Equity Group
X2303-01A - 1 Home Campus
Des Moines, IA 50328-0001

Wells Fargo Bank
Attn. Sara Ottman
21 1st Street SW, Suite 350
Rochester, MN 55902

Octagon Trust
c/o John Flottmeier
301 Carlson Pkwy, Suite 275
Minnetonka, MN 55305

Hennepin County Treasurer
A600 Government Center
300 South Sixth Street
Minneapolis, MN 55487

Jordan Family, LLC
400 E. Lake Street
Minneapolis, MN 55408

Crown Bank
6600 France Avenue South
Suite 125
Edina, MN 55435

Marjorie A. Nelson
1553 Linner Road
Wayzata, MN 55391

U.S. Bank
P.O. Box 790408
Saint Louis, MO 63179

Wells Fargo
P.O. Box 95225
Albuquerque, NM 87199-5225

Wells Fargo, N.A.
Private Banking Minneapolis
90 South 7th Street
Minneapolis, MN 55402

Bank of America
P.O. Box 17322
Baltimore, MD 21297

Chase Bank USA, N.A.
PO Box 15145
Wilmington, DE 19850-5145

Richard D. Goff
3908 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Indiana Department of Revenue
Bky Sec N 240
100 North Senate Avenue
Indianapolis, IN 46204

Edina Realty - Wayzata/Lake
Minnetonka Office
Attn. Patti Jo Hermann
1000 Superior Blvd Suite 200
Wayzata, MN 55391

121286406v1 0906146

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

                    Case No.:11-43113

    Curtis C. Nelson,

        Debtor.                           Chapter 11 Case

---

## ORDER APPROVING SALE FREE AND CLEAR OF LIENS AND INTERESTS

---

This matter came before the court on the debtor's motion for expedited relief and approval of sale free and clear of liens and interests.

Based on the motion, the file and the court being fully advised in the premises,

IT IS ORDERED:

1.      The request for expedited relief is granted.

2.      The debtor is authorized to perform according to the terms of the purchase agreement between the debtor and Marjorie Nelson, as sellers, and YuJin Han, as purchaser, for the sale of the real property located at 1553 Linner Road, Wayzata, MN 55391 and legally described as follows:

That part of Lot 10, Superior Boulevard Gardens, described as follows:

> Beginning at the Northwest corner of Lot 10, Superior Boulevard Gardens, thence South along the West line of said Lot 10 a distance of 170 feet; thence East and parallel with the North line of said Lot 10 a distance of 232 feet; thence North and parallel with the West line of said Lot 10 a distance of 170 feet to the North line of said Lot 10; thence West along the North line of said Lot 10 a distance of 232 feet to the point of beginning, according to the recorded plat thereof, and situate in Hennepin County, Minnesota.

3.      The purchaser shall take title to the real property sold pursuant to this order free and clear of all liens, interests, and encumbrances, including, but not limited to, the following:

a.      Marjorie Nelson's interests under the: (i) Findings of Fact, Conclusions of Law and Order for Judgment and Judgment and Decree filed on April 15, 2009 by the Minnesota State District Court for the Fourth Judicial District, Hennepin County, and recorded with the Office of the Hennepin County Recorder on April 17, 2009 as Document Number 9346462; and (ii) Amended Findings of Fact, Conclusions

of Law, Order for Judgment and Judgment and Decree filed on November 22, 2010 by the Minnesota State District Court for the Fourth Judicial District, Hennepin County;

b.      The interest of Wells Fargo Bank, N.A. under a mortgage dated April 22, 2003, and recorded with the Office of the Hennepin County Recorder on June 6, 2003 as Document Number 8064869;

c.      The interest of JPMorgan Chase Bank under a mortgage dated September 18, 2003, and recorded in the office of the Hennepin County Recorder on December 18, 2003 as Document Number 8254232;

d.      The interest of Jordan Family, LLC under the judgment in the amount of $337,647.48, entered by the Minnesota State District Court for the Fourth Judicial District on April 21, 2011 in the civil action captioned *Jordan Family, LLC v. Curtis C Nelson,* Case No. 27-CV-10-20961, and docketed in Hennepin County on May 4, 2011; and

e.      The interest of Crown Bank under the judgment in the amount of $3,800,000.00, entered by the Minnesota State District Court for the Fourth Judicial District on February 3, 2011 in the civil action captioned *Crown Bank v. Curtis C Nelson*, Case No. 27-CV-10-24189, and docketed in Hennepin County on February 15, 2011.

4.      Proceeds from the sale shall be disbursed as follows:

a.      First, $30,000.00 to Edina Realty, Inc., in satisfaction of commissions, fees, and expenses earned and payable by reason of the sale;

b.      Second, $5,445.32 to the Hennepin County Treasurer, in satisfaction of real estate taxes through the closing date;

c.      Third, customary and ordinary closing costs in an amount to be determined; and

d.      Fourth, the remaining proceeds will be paid to the JPMorgan Chase Bank, to be applied to the claim secured by the above-referenced mortgage.

5.      Notwithstanding 6004(h) of the Federal Rules of Bankruptcy Procedure this order shall not be stayed and is effective immediately.


Dated: _____                _____ _____

                                        Robert J. Kressel
                                        United States Bankruptcy Court Judge


2